## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No. CR 03-2063 MV

BRIAN TONY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant's Motion for Judgment of Acquittal, filed December 16, 2004 **[Doc. 42]**. The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, finds that the motion is not well taken and will be **DENIED**.

## BACKGROUND

On October 17, 2003, Brian Tony ("Defendant") was charged in an Indictment with one count of assault with a dangerous weapon (Count One); two counts of assault resulting in serious bodily injury to James and Mary Whitegoat respectively (Counts Two and Three); and one count of aggravated burglary (Count Four). The case went to trial on December 7, 2004. The jury returned a verdict of guilty on Counts Two, Three, and Four and a verdict of not guilty on Count One of the Indictment. After the jury's verdict, Defendant timely filed a motion for judgment of acquittal as to Count Two. In his motion, Defendant does not challenge his convictions on Counts Three and Four.

**STANDARD**

I.    Judgment of Acquittal

In reviewing a motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, the Court must determine whether "viewing the evidence in the light most favorable to the government, any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Vallo*, 238 F.3d 1242, 1247 (10th Cir. 2001) (quotation omitted). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." *United States v. Valdez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998) (citation omitted). However, the "evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt," and a "conviction must not be obtained simply 'by piling inference upon inference.'" *Id*.

**DISCUSSION**

Defendant argues that a judgment of acquittal on Count Two is warranted because the government failed to produce sufficient evidence to allow any rational trier of fact to find beyond a reasonable doubt that Defendant assaulted Mr. Whitegoat and that the assault resulted in serious bodily injury. In support of this argument, Defendant states the following: (1) during the course of the trial, "a real question arose as to whether the Defendant had been properly identified as the perpetrator"; (2) "the nature and strength of the testimony indicating that the Defendant was the perpetrator was as weighty as that indicating that the alleged victims were struck with a deadly weapon"; and (3) "aside from the allegation of serious bodily injury, the primary difference between Count 1 of the indictment and Count 2 of the indictment is the inclusion of the use of a deadly weapon." Therefore, Defendant argues that no rational juror could have convicted him of

Count Two.  The government argues in turn that at trial there was abundant evidence offered and admitted to prove the defendant assaulted James Whitegoat.

At trial, several witnesses testified about the events of May 2, 2000.  That day, James and Mary Whitegoat were at their residence on the Navajo Indian Reservation, west of Gallup, New Mexico.  Mrs. Whitegoat testified that she was sitting near the front window when she saw two people coming towards the house.  She called out to her husband and told him to go to the door to see who they were. Mr. Whitegoat went to go to the screen door and Defendant[1] "grabbed him and hit him and he fell."  Record of Transcript, Volume 2 (R.T. 2) at 227:1-7.  According to Mrs. Whitegoat, Defendant then took off Mr. Whitegoat's shirt and dragged him with it to another room.  After he hit Mr. Whitegoat, Defendant grabbed Mrs. Whitegoat, threw her to the ground, and hit her over the head with a hatchet.  The blow to her head rendered Mrs. Whitegoat unconscious.  Somehow, Mr. Whitegoat got her to their car and drove to the Firestone Tire Shop in Gallup, where their son Richard Whitegoat ("Richard") worked.

Richard testified that his father pulled up in front of the Firestone store and honked his horn several times.  When Richard finally made it outside, he saw that his father had blood on his face and that his eyes were shut.[2]  He saw that his mother's face was swollen and it also had blood on it.  Richard asked his father what happened and Mr. Whitegoat told him in Navajo that Defendant had come into the house that afternoon.  The Whitegoats were transported from the

---

[1] Mrs. Whitegoat positively identified Defendant as the perpetrator during her testimony. *See* Record of Transcript Volume 1 (R.T. 1) at 225-226.  She recognized Defendant because he had lived on the Whitegoat hogan with his family when he was younger.  During that time, Defendant referred to Mr. Whitegoat as "grandpa."

[2] At trial, the jury was shown several pictures of Mr. Whitegoat's injuries.

Firestone store to the Gallup Indian Medical Center for emergency treatment. Because they had suffered such major injuries, they were flown to a hospital trauma unit in Flagstaff for further treatment.

Dr. Don Seelinger, an expert in the field of neurology, reviewed the medical records of Mr. Whitegoat. He testified at trial that Mr. Whitegoat had been assaulted and had suffered multiple cuts on his arms and head. According to Dr. Seelinger, as a result of the assault, Mr. Whitegoat also received a comminuted skull fracture, meaning that "the bone itself was broken into little pieces." R.T. 1 at 158:15-21. Because of the skull fracture, Mr. Whitegoat had a slight depression in his skull, a small area of hemorrhage outside his brain, and "a big bruise to the brain." R.T. 1 158-159. Dr. Seelinger went on to state the following:

> [B]ecause there had been a breakage of the seal of the membranes around the brain, there was air inside the head, which shouldn't be there. And that's called pneumocephalus. That was just another indicator of the severity of the skull fracture and the depressed skull fracture.

R.T. 1 159:15-21. Based on Mr. Whitegoat's medical records, Dr. Seelinger concluded that Mr. Whitegoat suffered serious bodily injury as defined by federal law.

> Certainly, he had a potentially life-threatening injury to his skull, with a depressed skull fracture, and fortunately, he didn't show deterioration after the injury, but it remained limited. But if you have bleeding into and around the brain, that's very, certainly, potential (sic) life-threatening. If you have air around the brain, it means that the normal protective environment of the brain has been intruded upon, and you're at a high risk for getting an infection or a meningitis.

R.T. 1 160:20-161:7.

The Court finds that, based on the above-summarized testimony, Defendant's argument that there was insufficient evidence to convict him on Count Two is without merit. Substantial evidence in the record supports the jury's conclusion that Defendant assaulted Mr. Whitegoat and that the assault resulted in serious bodily injury. Mrs. Whitegoat testified that Defendant grabbed her husband, hit him, took off his shirt, and dragged him to another room. Mr. Whitegoat arrived at the Firestone store with blood on his face. His eyes were swollen. Hospital records revealed that as a result of the incident, Mr. Whitegoat suffered a skull fracture, multiple cuts on his head and arms, and a hemorrhage to his brain. Dr. Seelinger testified that these injuries were potentially life-threatening and qualified as "great bodily injury" under federal law.

Defendant argues that at trial "a real question" arose as to whether he had been properly identified as the perpetrator. The jury, however, rejected Defendant's identification argument by convicting him on three of the four counts against him. Moreover, the government presented sufficient evidence to identify Defendant as the perpetrator. Mrs. Whitegoat identified Defendant in court. Richard also testified that his father told him outside the Firestone store that Defendant was responsible for his injuries.

Defendant further argues that the jury's verdict was inconsistent, as it convicted him of Count Two, while acquitting him of Count One. These verdicts are not inconsistent. The jury reasonably found that Defendant assaulted Mr. Whitegoat in such a way as to cause great bodily injury, while at the same time finding that Defendant did not assault Mr. Whitegoat with a "dangerous weapon" as the term was defined in the jury instructions.

## CONCLUSION

The evidence as set forth above and the reasonable inferences to be drawn from this

evidence were sufficient to permit the jury to decide that Defendant assaulted Mr. Whitegoat and that the resulted in great bodily injury. Accordingly, Defendant's Motion for Judgment of Acquittal **[Doc. No. 42]** must be denied.

**IT IS SO ORDERED**.

**DATED** this 26th day of May, 2005.

_____
MARTHA VAZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE


Attorney for Plaintiff:
Roberto Ortega
Presiliano Torrez

Attorney for Defendant:
Charles Knoblauch